CULPEPPER, Judge.
The Succession of Frank Alexander was opened on the petition of his widow, Mary Jones Alexander, who qualified as ad-ministratrix. In subsequent proceedings the property of the succession was sold, the debts paid, and there remains the sum of approximately $2500 for distribution to decedent’s heirs. The administratrix contends the decedent’s sole heir is his minor child, Harry Lee Alexander, born of the marriage between the administratrix and the decedent. The opponent is Eunice Alexander, decedent’s sister. She contends the decedent died without issue. She says Harry Lee Alexander is not even the child of the administratrix but, instead, is the child of a third party, who gave the child to the administratrix to raise. From an adverse judgment, the opponent appeals.
*623 The issue is factual. Is the minor, Harry-Lee Alexander, the child of the admin-istratrix? If he is indeed her child, then the facts show that he was born during the marriage between the administratrix and the decedent and, no action having been brought by the decedent or his heirs to disavow paternity during the times provided by law, the child is presumed to be born of the husband. LSA-C.C. Articles 184 — 192.
The version of the facts given by the administratrix is substantially as follows: She and the decedent were married on May 25, 1951 and lived in Lafayette, Louisiana until his death. On August 26, 1958 at about 4:30 a. m. she gave birth to the child, Harry Lee Alexander, in an automobile while enroute to the Lafayette Charity Hospital. Her son by a previous marriage, Henry Simpson, was driving the car and he got out and went home. Mary’s mother and sister helped with the delivery of the child in the automobile. After the delivery, the sister, Clara Jones Vallot, drove on to the Lafayette Charity Hospital where the baby was examined and weighed. ’Mary was not examined and neither she nor the baby were kept in the hospital. She returned that night to her home on Lillian Street in Lafayette.
The administratrix contends the child was raised in the home occupied by herself and the decedent and that the decedent acknowledged the child to be his own. A certificate from the Mallillieux Methodist Church in Lafayette shows that Harry Lee Alexander, born August 24, 1958, was baptized on September 9, 1958. The father is shown to be Frank Alexander and the mother Mary Jones.
The administratrix also introduced in evidence a certified copy of a delayed birth certificate, issued by the Division of Public Health Statistics of the State of Louisiana. This shows that on August 13, 1962 the ad-ministratrix signed an affidavit pursuant to which a certificate of live birth was issued. The certificate states that Harry Lee Alexander was born enroute to the Lafayette Charity Hospital on August 26, 1958, that Mary Jones is the mother and Frank Alexander the father, and that Dr. M. Brown, who is not available for signature, was the attending physician. A representative of the Bureau of Vital Statistics testified it is not unusual for such delayed certificates of birth to be obtained in this manner.
The opponent makes a strong case on the facts. Lois Joseph Mitchell testified that in 1958 she and the administratrix were working at the Gordon Hotel in Lafayette. Lois says that during this time she gave birth to a child, Michael Ray Mitchell. The birth certificate filed in evidence shows this child was born on August 25, 1958 at the Lafayette Charity Hospital. Lois testified she was separated from her husband at the time so she gave the child to Mary Jones Alexander to raise as her own.
The opponent contends the following show the evidence of the administratrix is unworthy of belief:
1) The Custodian of Records at Lafayette Charity Hospital testified there was no such person as “Dr. M. Brown” working at the hospital at the time the child was born in 1958. Hence, the statement by the admin-istratrix in her affidavit to obtain a delayed birth certificate, that the attending physician was Dr. M. Brown, is false.
2) The administratrix testified that during her pregnancy in 1958 she was seen and treated for this condition by her family physician, Dr. William Melancon. However, Dr. Melancon testified that although he saw the ad-ministratrix as her family physician, he did not have any record of her pregnancy.
3) The administratrix testified that when they started for the hospital the night the child was born, her son, Henry Simpson, by a previous marriage, was driving. This son was only *624 12 or 13 years of age at the time, and it is highly improbable that he would have been allowed to drive under such circumstances.
4) The administratrix testified that during her pregnancy in 1958 she was working at the Gordon Hotel and stopped work after the child was bom on August 26, 1958. She gave the names of several co-employees who could have verified the fact that she was pregnant, but none of these were called by the administratrix to testify.
5) Lois Joseph Mitchell, the actual mother of the child in question, testified she was also working at the Gordon Hotel in 1958, and the ad-ministratrix was not pregnant.
6) The only witnesses who testified that the administratrix gave birth to the child are her mother, her sister and her son by a previous marriage. The opponent says these witnesses are obviously biased.
7) The testimony of the administratrix and her sister is in conflict as to the intersection on Lillian Road where the automobile was located at the time the child was allegedly born.
8) The baptismal certificate shows the date of birth of the child as August 24, 1958, but the delayed birth certificate shows the date as August 26, 1958. The opponent says the actual mother of a child is not likely to make a mistake as to the date of its birth.
9) The opponent’s witness, Wallace Broussard, testified he had lived near the home of the administratrix and Frank Alexander since 1953 and that he did not know the administratrix was pregnant during that time.
It is apparent from the above brief discussion of the evidence that a decision of this case depends principally on an evaluation of the credibility of the witnesses. The trial judge gave greater credence to the testimony of the witnesses for the ad-ministratrix than to those of the opponent. This is a matter which is peculiarly within the province of the trier of fact. We find no manifest error.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the opponent-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.